I.DONALD WEISSMAN (Bar No. 67980)
**WASSERMAN, COMDEN & CASSELMAN, L.L.P.**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 705-6800 • (323) 872-0995
Facsimile:  (818) 345-0162

Attorneys for ROBERT DESTFINO, ILA
DESTFINO, BONNNIE BOONE, MARK
HARPER, MICHAEL TAVAREZ,
SHAWN TAVEREZ and PETER CHIS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ROBERT DESTFINO, an individual; ILA DESTFINO, an individual; BONNIE BOONE, an individual; MARK HARPER, an individual; MICHAEL TAVAREZ, an individual; SHAWN TAVAREZ, an individual and PETER CHIS, an individual, , <br><br>    Plaintiff, <br><br>    vs. <br><br> WILLIAM J. KENNEDY aka BILL KENNEDY, individually and d/b/a AMERICAN LEGAL SERVICES, d/b/a THE EAR OF MALCHUS, d/b/a THE LOST SHEEP, THE EAR OF MALCHUS, a Washington corporation; THE LOST SHEEP, a Washington Corporation; LYLE E. DAVIES, individually and d/b/a FINANCIAL WELLBEING SOLUTIONS; KENNETH L. REISWIG aka KENNY L. REISWIG, individually and d/b/a THE SILVER TRUMPETS; EFFIE REISWIG, individually and d/b/a THE SILVER TRUMPETS; THE SILVER TRUMPETS, a Washington corporation; RITA I. JOHNSON aka RITA A. JOHNSON, individually and d/b/a HER COPYRIGHT; JUDITH RODERICK, an individual; | CASE NO. 1:08-CV-01269-LJO-DLB<br><br>Assigned to the Honorable Lawrence J. O'Neill<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>1.   **FRAUD**<br><br>2.   **UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 et seq.**<br><br>3.   **FRAUD IN THE INDUCEMENT**<br><br>4.   **UNJUST ENRICHMENT**<br><br>5.   **BREACH OF FIDUCIARY DUTY**<br><br>6.   **CONVERSION**<br><br>7.   **CONSPIRACY TO COMMIT FRAUD**<br><br>8.   **INTENTIONAL MISREPRESENTATION**<br><br>9.   **NEGLIGENT MISREPRESENTATION** |

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

891858.1

| | |
|---|---|
| 1 | DANNY V. SESE, individually and d/b/a GENTRY GROUP; GENTRY |
| 2 | GROUP, a Texas Corporation; JEROME WEBB, an individual; |
| 3 | KURT F. JOHNSON, an individual; D. SCOTT HEINEMAN aka DALE |
| 4 | SCOTT HEINEMAN, an individual; TONY SCARLOTTA, aka TONI |
| 5 | SCARLOTTA, an individual; NEW CENTURY MORTGAGE |
| 6 | CORPORATION, an unknown business entity; |
| 7 | COURTESY AUTOMOTIVE CENTER, an unknown business entity; |
| 8 | COURTESY CHEVROLET CADILLAC SUZUKI, an unknown |
| 9 | business entity; JOHN GROUP, BEN WELLS aka |
| 10 | BENJAMIN WELLS, an individual; JEFF AULT aka JEFFREY AULT, an |
| 11 | individual; VICK SINGH, an individual; |
| 12 | INTERNATIONAL ASSOCIATION OF CORPORATION SOLE, an |
| 13 | unknown entity; PETER KIM, individually and d/b/a |
| 14 | SKM DEBT SERVICES; SUSAN W. KIM, individually and d/b/a |
| 15 | SKM DEBT SERVICES; RICHARD LALONDE aka RICK |
| 16 | LALONDE; JERRY COOK aka JEROME COOK; |
| 17 | INDYMAC BANK, a California Corporation; |
| 18 | DARRYL LEBARTHE, an individual; WB FINANCIAL, a California |
| 19 | Corporation; JEROME WEBB, an individual; |
| 20 | NICHOLE KLAUSNER, an individual; FINANCIAL TITLE COMPANY, a |
| 21 | California Corporation; GLEN BERTEAU, an individual; |
| 22 | DEBBIE BERTEAU, an individual; DARRYL TURNER, an individual; |
| 23 | MICHAEL WILLIAMS, an individual; ROBERT JONES aka ROB JONES, an |
| 24 | individual; ROBERT ONA, aka BOB ONA, an |
| 25 | individual; JEREMY JOHNSON, an individual; |
| 26 | ASSEMBLIES OF GOD CHURCH d/b/a CALVARY TEMPLE WORSHIP |
| 27 | CENTER  and DOES 1-100, inclusive, |
| 28 | Defendant. |

**10.  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**11.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**12.  NEGLIGENCE**

**13.  HARASSMENT**

**14.    STALKING**

[Removal Filed:  August 26, 2008]

Trial Date:              None

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

_____

**FOR ALL CAUSES OF ACTION**

**PLAINTIFFS HEREIN ALLEGE THE FOLLOWING**

**GENERAL ALLEGATIONS:**

1.      Plaintiffs ROBERT DESTFINO, ILA DESTFINO, BONNIE BOONE, MARK HARPER, MICHAEL TAVAREZ, SHAWN TAVAREZ and PETER CHIS are and were at all times relevant hereto individuals living in this judicial district.

2.      Defendant WILLIAM J. KENNEDY, also known as BILL KENNEDY, d/b/a AMERICAN LEGAL SERVICES, d/b/a THE EAR OF MALCHUS, d/b/a THE LOST SHEEP, and d/b/a FINANCIAL FREEDOM FIRST, is and was at all times relevant hereto an individual living in the State of California and doing business in this judicial district.    (Hereinafter, "KENNEDY".)    KENNEDY is the mastermind behind the "corporate sole" schemes employed in this lawsuit.   KENNEDY is the protégé of an individual indicted for marketing the same schemes.   KENNEDY was responsible for overseeing all aspects of the corporation sole scheme.   KENNEDY is the officer of THE EAR OF MALCHUS and of THE LOST SHEEP and acted on their behalf.   Kennedy also personally met with Plaintiffs at the home of Co-Defendants KENNY REISWIG and EFFIE REISWIG to present sales pitches of the programs discussed below.

3.      Plaintiffs are informed and believe and thereon allege that KENNEDY, AMERICAN LEGAL SERVICES, THE EAR OF MALCHUS, and THE LOST SHEEP are not licensed to do business in the State of California, and have not filed requests to do business in California under a fictitious business name.

4.      Defendant THE EAR OF MALCHUS is and was at all times relevant hereto is a Washington corporation doing business in this judicial district under the laws of the State of California.  Defendant THE EAR OF MALCHUS is a corporation sole created by KENNEDY.  The corporation was used as a vehicle in the investment scheme.

891858.1

3

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

5. Defendant THE LOST SHEEP is and was at all times relevant hereto a Washington corporation doing business in this judicial district under the laws of the State of California. Defendant THE LOST SHEEP is a corporation sole created by KENNEDY. The corporation was used as vehicle in the investment scheme.

6. At all times relevant hereto, KENNEDY was acting in his capacity as the officer of THE EAR OF MALCHUS and of THE LOST SHEEP and on their behalf.

7. Defendant LYLE E. DAVIES, d/b/a FINANCIAL WELLBEING SOLUTIONS (hereinafter, "DAVIES") is the agent responsible selling victims on the car loan scheme, including making the representations described below, and connecting them with agents at Courtesy Automotive to purchase automobiles. DAVIES profited from commissions on car sales, as well as received a portion of initial fees paid by victims. DAVIES further sent correspondence to Plaintiffs, including Plaintiffs SHAWN TAVAREZ on or about July of 2008, on behalf of FINANCIAL WELLBEING SOLUTIONS outlining the steps required to enter the program.

8. Plaintiffs are informed and believe and thereon allege that DAVIES and FINANCIAL WELLBEING SOLUTIONS are not licensed to do business in the State of California, and have not filed requests to do business in California under a fictitious business name.

9. Defendant KENNETH L. REISWIG, also known as KENNY L. REISWIG, d/b/a THE SILVER TRUMPETS, (hereinafter, "K. REISWIG".), is the chief salesperson working directly under the direction of KENNEDY. K. REISWIG was responsible for creating the marketing and distribution plans to recruit new investors. K. REISWIG invited Plaintiffs Robert and Illa Destfino to his and Co-Defendant EFFIE REISWIG's home to give a sales pitch describing the benefits of the Home Loan and Car Loan schemes plead below.

10. Defendant EFFIE REISWIG, d/b/a THE SILVER TRUMPETS, (hereinafter, "E. REISWIG") is the wife and co-conspirator of K. REISWIG. E. REISWIG assisted in marketing operations and the recruitment of new investors. She directly profited from any

1    investments obtained by K. REISWIG.

2    11.    Defendant THE SILVER TRUMPETS is the corporation sole created by and

3    for the use of K. REISWIG and E. REISWIG.  At all times relevant hereto, K. REISWIG

4    and E. REISWIG were acting in their capacities as officers of THE SILVER TRUMPETS

5    and on its behalf.

6    12.    At all times relevant hereto, K. REISWIG and E. REISWIG were acting in

7    their capacities as officers of THE SILVER TRUMPETS and on its behalf.

8    13.    Defendant RITA I. JOHNSON, also known as RITA A. JOHNSON, d/b/a

9    HER COPYRIGHT, is and was at all times relevant hereto an individual living in the State

10   of Washington, doing business in this judicial district under the laws of the State of

11   California.  (Hereinafter, "R. JOHNSON".)  R. JOHNSON was employed in the schemes

12   as a tax attorney and the "Corporation Sole incorporation expert."  R. JOHNSON was

13   responsible for the drafting and filing of all new corporations sole sold by KENNEDY and

14   K. REISWIG and their supervised marketing teams.  R. JOHNSON received and filed the

15   corporation sole documents with the Washington State Secretary of State's Office.  In

16   exchange, she received a portion of the setup fees collected by her co conspirators during

17   the marketing of the schemes.  R. JOHNSON processed the legal incorporation documents

18   for each of the Plaintiffs' Corporations Sole.

19   14.    Defendant JUDITH RODERICK, is and was at all times relevant hereto an

20   individual living in the State of Washington, doing business in this judicial district under

21   the laws of the State of California.  (Hereinafter, "RODERICK".)  RODERICK was

22   employed by KENNEDY as the "Corporation Sole tax expert."  RODERICK was

23   responsible for the preparation of all marketing materials describing the tax benefits of the

24   corporations sole, the preparation of all required government tax documents required for

25   the corporations sole sold to individuals, and participated in ongoing tax advice to the

26   purchasers of the corporations sole.  RODERICK personally received a percentage of the

27   fees charged to new buyers of the corporations sole.

28   15.    Defendant DANNY SESE, d/b/a GENTRY GROUP, is and was at all times

891858.1

5

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

relevant hereto an individual living in the State of California, and doing business in this judicial district. (Hereinafter, "SESE".) SESE was the manager of Defendant corporation GENTRY GROUP.

16. Defendant GENTRY GROUP is and was at all times a Texas corporation doing business in this judicial district under the laws of the State of California. (Hereinafter, "GENTRY".) SESE AND GENTRY provided investment advice to victims relating to the investment scheme, including promised returns on investments.

17. Defendant KURT F. JOHNSON is and was at all times relevant hereto a resident of the State of California doing business in this judicial district. (Hereinafter, "K. JOHNSON".) K. JOHNSON is an individual responsible for marketing of the schemes. The exact actions of K. JOHNSON are currently unknown, and will be amended as discovered.

18. Defendant D. SCOTT HEINEMAN also known as DALE SCOTT HEINEMAN is and was at all times relevant hereto a resident of the State of California doing business in this judicial district. (Hereinafter, "HEINEMAN".) HEINEMAN is an individual responsible for marketing of the schemes. The exact actions of HEINEMAN are currently unknown, an will be amended as discovered.

19. Defendant TONY SCARLOTTA, aka TONI SCARLOTTA, is and was at all times relevant hereto a resident of the State of California, living and doing business in this judicial district. (Hereinafter, "SCARLOTTA".) SCARLOTTA is an individual responsible for the marketing of the schemes. The exact actions of SCARLOTTA are currently unknown, and will be amended as discovered.

20. Defendant NEW CENTURY MORTGAGE CORPORATION is and was at all times relevant hereto an unknown business entity organized to do and doing business in this judicial district under the laws of the State of California. (Hereinafter "NEW CENTURY") NEW CENTURY was the vehicle used to obtain fraudulent mortgages issued to help the purchasers of the scheme to obtain a new refinanced mortgage through their newly created corporation sole. NEW CENTURY profited by obtaining the sales

891858.1

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  commission of each new mortgage issued, and was given a percentage of the fees charged

2  to purchasers of the scheme.

3      21.    Defendant COURTESY AUTOMOTIVE CENTER is and was at all times

4  relevant hereto an unknown business entity organized to do and doing business in this

5  judicial district under the laws of the State of California.

6      22.    Defendant COURTESY CHEVROLET CADILLAC SUZUKI is and was at

7  all times hereto an unknown business entity organized to do business and doing business in

8  this judicial district under the laws of the State of California.  (Hereinafter, COURTESY

9  AUTOMOTIVE CENTER and COURTESY CHEVROLET CADILLAC SUZUKI are

10  referred to collectively as "COURTESY AUTOMOTIVE CENTER" or "COURTESY".)

11  Defendants COURTESY AUTOMOTIVE CENTER, and COURTESY CHEVROLET

12  CADILLAC SUZUKI are a combined automotive dealer in Merced, California.

13  COURTESY was the vehicle used to obtain, sell, and finance new automobiles to

14  purchases of the scheme.  All purchasers of corporations sole were direct by KENNEDY,

15  K. REISWIG, and their employees to purchase a car from COURTESY as COURTESY

16  was familiar with processing loans and paperwork to newly established corporations sole.

17      23.    Defendant JOHN GROUP (hereinafter "GROUP") is and was at all times

18  relevant hereto a resident of, and doing business in this judicial district.  Plaintiffs are

19  informed and believe and thereon allege that GROUP is and was at all times relevant

20  hereto an employee of COURTESY AUTOMOTIVE CENTER.  GROUP is the finance

21  manager and employee of COURTESY.  GROUP was the individual responsible for

22  finding, approving, and personally signing all financed purchases of vehicles at the dealer,

23  including all loans fraudulently processed to corporations sole.  GROUP profited from the

24  sales commissions earned on each loan, as well as received a percentage of the fees

25  charged to buyers of the scheme

26      24.    Defendant BEN WELLS aka BENJAMIN WELLS is and was at all times

27  relevant hereto a resident of, and doing business in this judicial district.   (Hereinafter,

28  "WELLS".)  WELLS is and was at all times relevant hereto the owner of COURTESY

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   AUTOMOTIVE CENTER. WELLS was a co-conspirator of KENNEDY and K.

2   REISWIG and established a relationship to become the exclusive dealer of cars sold to the

3   newly created corporations sole owners. WELLS profited from the referrals of all

4   purchasers of the scheme after the participants were directed to purchase numerous

5   vehicles through their newly established corporation sole. WELLS profited by selling

6   vehicles at full retail price (or higher), from commissions on financing obtained to sell the

7   vehicles, and received a percentage of the fees charged to buyers of the scheme.

8       25.    Defendant JEFF AULT aka JEFFREY AULT is and was at all times relevant

9   hereto a resident of, and doing business in this judicial district. (Hereinafter, "AULT".)

10  AULT is and was at all times relevant hereto the sales manager of COURTESY

11  AUTOMOTIVE CENTER. AULT was responsible for approving and supervising all sales

12  at COURTESY, including the sales to corporations sole and fraudulent financing used to

13  complete the sales to the newly established corporations sole. AULT also assured

14  customers that COURTESY would repurchase any vehicle financed under the scheme

15  regardless of the state of the title. AULT profited from commissions on each sale, as well

16  as profit sharing from the sales of the scheme.

17      26.    Defendant VICK SINGH is and was at all times relevant hereto a resident of,

18  and doing business in this judicial district. (Hereinafter, "SINGH".) SINGH is and was at

19  all times relevant hereto an employee of COURTESY AUTOMOTIVE CENTER. SINGH

20  is the key sales contact at the dealer, and obtained the buyers and presented them to sales

21  and finance managers to close the sales. SINGH profited from the sales commissions

22  earned on the sales of vehicles to corporations sole, as well as received a percentage of the

23  fees charged to buyers of the scheme.

24      27.    Plaintiffs are informed and believe and thereon allege that defendant

25  INTERNATIONAL ASSOCIATION OF CORPORATION SOLE, an unknown entity, is

26  and was at all times relevant hereto doing business in this judicial district. Plaintiffs are

27  informed and believe and thereon allege that one or more of the other Defendants control

28  INTERNATIONAL ASSOCIATION OF CORPORATION SOLE.

28.     Defendant PETER KIM, d/b/a SKM DEBT SERVICES, is and was at all times relevant hereto an individual living in the County of Orange, State of California, and doing business in this judicial district.  (Hereinafter, "P. KIM".)  Plaintiffs are informed and believe and thereon allege that P. KIM puts himself forward as a corporate attorney and investment advisor.  Plaintiffs are further informed and believe and thereon allege that P. KIM and SKM DEBT SERVICES is the head of or has substantial power over the conspiracy alleged herein and directed the conduct of the other defendants.  KIM directed scheme victims to invest in the 6 month return program, promising returns on investment between 5-20%.  P. KIM profited by keeping a portion of the investment monies collected, and received a portion of the fees collected during the marking of the corporations sole.

29.     Defendant SUSAN W. KIM, d/b/a SKM DEBT SERVICES, is and was at all times relevant hereto an individual living in the County of Orange, State of California, and doing business in this judicial district.  (Hereinafter, "S. KIM".)  SUSAN W. KIM is the president of SKM DEBT SERVICES, and is a participant in the conspiracy alleged herein in her capacity as President of SKM DEBT SERVICES.  S. KIM profited by sharing in the proceeds collected by P. KIM, collecting profits taken from SKM DEBT SERVICES, and by receiving a portion of the fees collected during the marketing of the corporations sole.

30.     Defendant, RICK LALONDE, aka RICHARD LALONDE, (Hereinafter, "LALONDE") is and was at all times relevant hereto a resident of the State of California, living and doing business in this judicial district.  LALONDE is an individual responsible for marketing the schemes.  LALONDE profited from the initial fees charged to new victims as well as commission earned in the three schemes.  LALONDE made the representations regarding the Car Loan Scheme described below to Defendants SHAWN TAVAREZ and MICHAEL TAVAREZ in or about the Summer of 2006.  LALONDE informed all Plaintiffs that he was the Vice-President of AMERICAN LEGAL SERVICES.

31.     INDYMAC BANK, (Hereinafter, "INDYMAC") is and was at all times relevant hereto an unknown business entity organized to do and doing business in this

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    judicial district under the laws of the State of California.  INDYMAC was taken over by

2    the FDIC and was dismissed from this lawsuit, without prejudice.

3        32.    Defendant, DARRYL LEBARTHE, (Hereinafter, "LEBARTHE") is and was

4    at all times relevant hereto a resident of the State of California, living and doing business

5    in this judicial district.  LEBARTHE was responsible for forging loan documents and

6    income statement of customers to get loans approved with lenders.  LEBARTHE profited

7    from the sales commissions for the processed loans and shared in the fees collected from

8    new customers to the schemes.

9        33.    Defendant WB FINANCIAL, (Hereinafter, "WB") is and was at all times

10   relevant hereto an unknown business entity organized to do and doing business in this

11   judicial district under the laws of the State of California.  WB is the corporation handing

12   the investment scheme.  WB profited from the sales of the investment scheme without

13   paying the promised investment returns.

14       34.    Defendant, JEROME WEBB, (Hereinafter, "WEBB") is and was at all times

15   relevant hereto a resident of the State of California, living and doing business in this

16   judicial district.  WEBB was the key contact for refinancing homes and transferring

17   property to corporations sole.  WEBB was also responsible for explaining and selling

18   customers on the benefits of refinancing a home as a corporation sole.

19       35.    Defendant, NICHOLE KLAUSNER, (Hereinafter, "KLAUSNER") is and

20   was at all times relevant hereto a resident of the State of California, living and doing

21   business in this judicial district.  KLAUSNER is and was at all times relevant hereto was

22   the individual responsible for processing mortgages and title transfers for the victims.

23   KLAUSNER profited from a share of commissions earned during the transfers and from

24   the initial fees charged to victims.

25       36.    Defendant FINANCIAL TITLE COMPANY, (Hereinafter, "FINANCIAL

26   TITLE") is and was at all times relevant hereto an unknown business entity organized to

27   do and doing business in this judicial district under the laws of the State of California.

28   FINANCIAL TITLE was responsible for handling the transfer of homes to the

891858.1

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  corporations sole, and profited by earning commissions and profits sharing from the sales

2  of the scheme to victims.

3      37.    Defendant, GLEN BERTEAU, (Hereinafter, "G. BERTEAU") is and was at

4  all times relevant hereto a resident of the State of California, living and doing business in

5  this judicial district.  G. BERTEAU is the pastor and supervises all actions of Defendant

6  CALVARY WORSHIP CENTER.

7      38.    Defendant, DEBBIE BERTEAU, (Hereinafter, "D. BERTEAU") is and was

8  at all times relevant hereto a resident of the State of California, living and doing business

9  in this judicial district.  D. BERTEAU is the wife of G. BERTEAU and also supervises all

10 actions of Defendant CALVARY WORSHIP CENTER.

11     39.    Defendant, DARRYL TURNER, (Hereinafter, "TURNER") is and was at all

12 times relevant hereto a resident of the State of California, living and doing business in this

13 judicial district.  TURNER is on the board of elders of Defendant CALVARY WORSHIP

14 CENTER and attended meeting with JERRY COOK.  TURNER's role was to reinsure

15 individuals that their investments and participation in the schemes were secure.

16     40.    Defendant, JERRY COOK, aka JEROME COOK, (Hereinafter, "COOK") is

17 and was at all times relevant hereto a resident of the State of California, living and doing

18 business in this judicial district.  COOK is an individual responsible for the marketing of

19 the home loan mortgage scheme.  COOK profited from the sales commissions of new

20 mortgages and shared in the moneys collected during the marketing of the schemes.

21 COOK made the initial sales contact to Defendants SHAWN TAVAREZ and MICHAEL

22 TAVAREZ on or about October 2004 by telephone and by in person meetings detailing the

23 Home Loan and Car Loan Programs described below.

24     41.    Defendant, MICHAEL WILLIAMS, (Hereinafter, "WILLIAMS") is and was

25 at all times relevant hereto a resident of the State of California, living and doing business

26 in this judicial district.   WILLIAMS is an associate pastor of Defendant CALVARY

27 WORSHIP CENTER made false representations to Plaintiffs SHAWN TAVAREZ and

28 MICHAEL TAVAREZ regarding the success individuals have had following Co-

891858.1

SECOND AMENDED COMPLAINT FOR DAMAGES

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  Defendant COOK's advice.

2  42.  Defendant, ROBERT JONES aka ROB JONES, (Hereinafter, "JONES") is

3  and was at all times relevant hereto a resident of the State of California, living and doing

4  business in this judicial district.  JONES is an associate pastor of Defendant CALVARY

5  WORSHIP CENTER.  JONES threatened Plaintiffs SHAWN TAVAREZ and MICHAEL

6  TAVAREZ with interfering with their unrelated business relationship if Plaintiffs did not

7  follow the programs described below.

8  43.  Defendant, ROBERT ONA aka BOB ONA, (Hereinafter, "ONA") is and

9  was at all times relevant hereto a resident of the State of California, living and doing

10  business in this judicial district.  ONA is a Pastor in Defendant CALVARY WORSHIP

11  CENTER church.

12  44.  Defendant, JEREMY JOHNSON, (Hereinafter, "J. JOHNSON") is and was

13  at all times relevant hereto a resident of the State of California, living and doing business

14  in this judicial district.

15  45.  The true names and capacities of Defendants DOES 1 through 100,

16  inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs

17  at this time, who therefore sue said Defendants, and each of them, by such fictitious

18  names.  When the true names and capacities of said Defendants, and each of them, are

19  ascertained, Plaintiffs will seek leave to amend this Complaint to insert the same.

20  Plaintiffs are informed and believe and thereon allege that each Defendant named herein as

21  a DOE is responsible in some manner for each and every obligation hereinafter set forth.

22  46.  Plaintiffs are informed and believe and thereon allege that at all times herein

23  mentioned, each Defendant is and was the duly acting and authorized agent, employee,

24  representative, servant, alter ego or co-conspirator of each of the other Defendants, and

25  were acting within the course and scope of such agency and employment.  Plaintiffs

26  further allege that all of the acts or omissions are or were committed with the knowledge,

27  permission, ratification and consent of the remaining Defendants.

28  47.  Plaintiffs are informed and believe, and thereon allege that at all times

891858.1

12

mentioned, that Defendants are each the alter egos of each other. At all times mentioned, there existed such a unity of interest in ownership and interests between each of the Defendants that any separateness ceased to exist between them. The exercise of complete dominance and control over the other entities and their properties, rights and interests, rendered such entities as mere shells and instrumentalities of each other Defendant.

48.    Plaintiffs are informed and believe, and thereon allege at all times mentioned herein, Defendants were operating a tax/debt elimination scheme through a "corporation sole." Defendants' falsely or fraudulently advised Plaintiffs that corporations sole that are used for the participant's personal benefit are tax/debt exempt. Therefore, by paying fees and joining the corporation, the participant of the corporation sole can assign his income or property to the corporation sole and thereby transfer all taxable income into nontaxable income of the corporation sole, and eliminate debt through the corporation sole.

49.    Defendants further touted their corporation sole as a mechanism that would enable the participants to transfer their residences or real estate into the corporation sole and thereby eliminate all income taxes, property taxes and mortgage debt. The participants would then be able to use and maintain their residences tax-exempt and debt free.

## FIRST CAUSE OF ACTION
## AGAINST THE HOME MORTGAGE DEFENDANTS
## AND EACH OF THEM FOR FRAUD,
## THE HOME MORTGAGE PLAINTIFFS ALLEGE:

50.    Plaintiffs incorporate and reallege paragraphs 1 through 49 as though set forth in full.

51.    The term "HOME MORTGAGE PLAINTIFFS" refers to, collectively, all Plaintiffs herein.

52.    The term "HOME MORTGAGE DEFENDANTS" refers to, collectively, Defendants KENNEDY, AMERICAN LEGAL SERVICES, THE EAR OF MALCHUS, THE LOST SHEEP, DAVIES, FINANCIAL WELLBEING SOLUTIONS, K. REISWIG,

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

E. REISWIG, THE SILVER TRUMPETS, R. JOHNSON, HER COPYRIGHT, RODERICK, SESE, GENTRY GROUP, K. JOHNSON, HEINEMAN, SCARLOTTA, NEW CENTURY MORTGAGE CORPORATION, INTERNATIONAL ASSOCIATION OF CORPORATION SOLE, P. KIM, S. KIM, SKM DEBT SERVICES, LALONDE, LEBARTHE, WB, WEBB, KLAUSNER, FINANCIAL TITLE, COOK, and DOES 1-100.

53.     At all times mentioned herein, the HOME MORTGAGE DEFENDANTS, and each of them, knowingly and willfully conspired and agreed among themselves to defraud the HOME MORTGAGE PLAINTIFFS.     The HOME MORTGAGE DEFENDANTS did the acts and things herein alleged pursuant to, and in furtherance of, this conspiracy.

54.     Under this conspiracy, the HOME MORTGAGE DEFENDANTS agreed among themselves to create, pursue and participate in a "debt elimination" scam or scheme, referred to as the "Corporation Sole/Mortgage Elimination Trust Program".

55.     The Corporation Sole/Mortgage Elimination Trust Program is based on the theory that no enforceable debt accrues when lenders and financial institutions provide home mortgage loans.

56.     Specifically, when an individual obtains a home mortgage or other loan, the borrower signs a promissory note in favor of the lender.     The lender uses that signed promissory note to "create" the money on its books to fund the loan, and the lender then provides the money "created" by the signed promissory note to the borrower.     When a lender sells the borrower's signed promissory note to a third party, the note is recorded as an asset on the lender's balance sheet, and the lender has a corresponding liability to the borrower.     In other words, ignoring that the lender has already paid the loan on behalf of the borrower to the seller of the home, the HOME MORTGAGE DEFENDANTS represent that the lender owes the borrower the full amount of the loan.

57.     The goal of the conspiracy was and is at all time relevant hereto to convince the HOME MORTGAGE PLAINTIFFS:

a.     To refinance their real property for the full amount of the equity in

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

their homes available to them, using Corporation Sole/Mortgage Elimination Trust Program mortgage brokers, including SCARLOTTA and LEBARTHE, often at rates far higher than the rates the HOME MORTGAGE PLAINTIFFS were obligated to pay to their previous lenders and with onerous pre-payment penalties not required by their previous mortgages. The HOME MORTGAGE PLAINTIFFS are informed and believe and thereon allege that HOME MORTGAGE DEFENDANTS also received a kickback from the lenders and the other members of the conspiracy for the home equity loans they instructed the HOME MORTGAGE PLAINTIFFS to obtain from the Corporation Sole/Mortgage Elimination Trust Program mortgage brokers, including SCARLOTTA and LEBARTHE;

        b.      To pay the HOME MORTGAGE DEFENDANTS a percentage of the loan proceeds that the HOME MORTGAGE PLAINTIFFS received when they refinanced their homes of 15%, 20% or more of the unpaid loan proceeds, as a commission for brokering the new mortgage. Plaintiffs are informed and believe and thereon allege that the HOME MORTGAGE DEFENDANTS shared the commission in varying percentages;

        c.      To set up Corporation Sole entities which the HOME MORTGAGE DEFENDANTS falsely represented:

        i.      Would legally eliminate all of the HOME MORTGAGE PLAINTIFFS' debt within approximately four to six months;

        ii.      Are tax-exempt, and would transform the HOME MORTGAGE PLAINTIFFS' taxable individual income to nontaxable income of the Corporation Sole; and

        iii.      Thus protect the HOME MORTGAGE PLAINTIFFS' assets and income from creditors and federal and state tax liabilities. In doing so, the HOME MORTGAGE DEFENDANTS misrepresented to the HOME MORTGAGE PLAINTIFFS, the state and federal laws concerning Corporation Sole entities, which are intended only for bona-fide churches, religious institutions and church leaders. When used as intended, Corporation Sole statutes enable religious leaders to become incorporated as individuals as a way of separating themselves legally from the control and ownership of church assets;

891858.1

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

d. To pay the HOME MORTGAGE DEFENDANTS $10,000.00 to $25,000.00 or more to create the Corporation Sole entities;

e. To transfer the HOME MORTGAGE PLAINTIFFS' real and personal property, including but not limited to their homes, motor vehicles, and other assets and income to their Corporation Sole entities;

f. To designate Defendants K. JOHNSON and HEINEMAN as the Trustees of the Corporation Sole trusts and to assign the HOME MORTGAGE PLAINTIFFS' ownership interests in their real and personal property to the Trustees; and

g. To add Defendants K. JOHNSON and HEINEMAN to the title of their properties, thus effectively preventing or substantially hindering the ability of the HOME MORTGAGE PLAINTIFFS from using their properties to refinance the mortgages the HOME MORTGAGE PLAINTIFFS obtained from or through the HOME MORTGAGE DEFENDANTS, and to prevent the HOME MORTGAGE PLAINTIFFS from selling their properties to third persons.

58. The following actions were taken in furtherance of the conspiracy by and between the HOME MORTGAGE DEFENDANTS.

59. In 2004, 2005 and 2006, defendants KENNEDY, DAVIES, K. REISWIG E. REISWIG, LALONDE and COOK solicited Plaintiffs for the Corporation Sole/Debt Elimination Program. KENNEDY, DAVIES, K. REISWIG, E. REISWIG, LALONDE and COOK, individually and together, repeatedly told each of the HOME MORTGAGE PLAINTIFFS, individually and together, in person and by telephone, mail and email, almost daily and over a period of weeks and months:

a. About the theory underlying the HOME MORTGAGE DEFENDANTS' Corporation Sole/Mortgage Equity Trust Program, as set forth above;

b. The HOME MORTGAGE DEFENDANTS had found a loophole in the lending system;

c. Using the Corporation Sole/Mortgage Elimination Trust Program, the HOME MORTGAGE PLAINTIFFS would be able to avoid the "fraud" perpetrated by the

lending industry;

        d.      The Corporation Sole/Mortgage Elimination Trust Program was legal;

        e.      The Corporation sole would legally eliminate the HOME MORTGAGE PLAINTIFFS' mortgages, loans and other debts;

        f.      The Corporation Sole would protect the HOME MORTGAGE PLAINTIFFS' assets and income from creditors and federal and state tax liabilities by transforming their taxable individual income to nontaxable income of the Corporation sole, and the HOME MORTGAGE PLAINTIFFS would not need to file tax returns;

        g.      The HOME MORTGAGE PLAINTIFFS would have to create a Corporation Sole and trust to protect their assets from their creditors and the government;

        h.      The HOME MORTGAGE DEFENDANTS would create the Corporations Sole and trusts for the HOME MORTGAGE PLAINTIFFS;

        i.      The HOME MORTGAGE PLAINTIFFS had to transfer their property interests to their trusts to provide the Trustees with the authority to act on their behalf with respect to their property;

        j.      The HOME MORTGAGE PLAINTIFFS had to refinance their property for as much as the lender would permit, hopefully, 100% of the equity in their homes;

        k.      SCARLOTTA and LEBARTHE were mortgage loan brokers who would help the HOME MORTGAGE PLAINTIFFS to refinance their homes so that they pulled out the most equity that the lender would allow;

        l.      One or more of the HOME MORTGAGE DEFENDANTS specialized in canceling mortgages and had been doing this for a number of years with a 100% success rate;

        m.      The HOME MORTGAGE DEFENDANTS would ensure that the HOME MORTGAGE PLAINTIFFS' new mortgages were cancelled within four to six months, at which time THE MORTGAGE PLAINTIFFS would own their homes free and clear, unencumbered by any debt, and without any negative reports to the credit bureaus;

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

n.  The HOME MORTGAGE PLAINTIFFS could use the proceeds from their cancelled home loans to build additional wealth;

o.  KENNEDY was President of AMERICAN LEGAL SERVICES which employed attorneys who would assist the HOME MORTGAGE PLAINTIFFS with any legal problems they encountered as a result of their participation in the program;

p.  DAVIES was introduced to Plaintiffs and represented himself as the Director of the Oakland office of the IRS.  PLAINTIFFS are informed and believe that this was a misstatement of fact and truth and subject to felony charges for impersonating an IRS agent.  DAVIES and his company FINANCIAL WELLBEING SOLUTIONS were to assist the HOME MORTGAGE PLAINTIFFS in incorporating the Corporations Sole and trusts and take the steps necessary to cancel their mortgages;

q.  R. JOHNSON was a specialist in incorporating Corporations Sole, would prepare the Corporation Sole papers, and record them in the State of Washington. R. JOHNSON identified the Corporations Sole as "private religious" corporations. R. JOHNSON knew, as a Corporation Sole expert, but did not disclose to the HOME MORTGAGE PLAINTIFFS that the Corporations Sole she incorporated for them were not legal;

r.  P. KIM of SKM DEBT SERVICES was the "guru" of the operation; and,

s.  K. REISWIG and E. REISWIG had participated in the Corporation Sole/Mortgage Elimination Trust Program and it had been very successful for them.

60.  K. REISWIG, E. REISWIG, KENNEDY, DAVIES, SCARLOTTA, LEBARTHE, LALONDE and COOK represented to the HOME MORTGAGE PLAINTIFFS that the above-described statements were true.  In truth and in fact, the above-described representations were false.  The HOME MORTGAGE DEFENDANTS knew that these representations were false when the representations were made. K. REISWIG, E. REISWIG, KENNEDY, DAVIES, SCARLOTTA, LEBARTHE, LALONDE, and COOK also made the representations recklessly and without regard for

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  their truth.

2  61.  The HOME MORTGAGE DEFENDANTS intended that the HOME

3  MORTGAGE PLAINTIFFS would rely on the above-described representations, as set

4  forth above.  The representations made by each of the HOME MORTGAGE

5  DEFENDANTS to each of the HOME MORTGAGE PLAINTIFFS was identical or

6  substantially similar.

7  62.  Based upon the written and oral representations of Defendants K. REISWIG,

8  E. REISWIG, KENNEDY, DAVIES, SCARLOTTA and LEBARTHE, the HOME

9  MORTGAGE PLAINTIFFS reasonably believed that the Corporation Sole/Mortgage

10  Elimination Trust Program espoused by K. REISWIG, E. REISWIG, KENNEDY,

11  DAVIES, and SCARLOTTA and LEBARTHE was legal, would give the HOME

12  MORTGAGE PLAINTIFFS the results promised by the HOME MORTGAGE

13  DEFENDANTS, were otherwise all that said defendants said they were, and that the

14  HOME MORTGAGE DEFENDANTS were honest and trustworthy.

15  63.  Relying on the oral and written representations of Defendants K. REISWIG,

16  E. REISWIG, KENNEDY, DAVIES, SCARLOTTA and LEBARTHE, and unaware of the

17  falsity of their representations, the HOME MORTGAGE PLAINTIFFS agreed to

18  participate in the Corporation Sole/Mortgage Elimination Trust Program.

19  64.  Thereafter, following instructions from the HOME MORTGAGE

20  DEFENDANTS and each of them, the HOME MORTGAGE PLAINTIFFS took the

21  following actions:

22  a.  Paid THE EAR OF MALCHUS $25,000.00 or more each, as the fee

23  for participating in the Corporation Sole/Mortgage Elimination Trust Program; and

24  b.  Refinanced their homes with defendant NEW CENTURY

25  MORTGAGE COMPANY and other lenders for the full amount of the equity the HOME

26  MORTGAGE PLAINTIFFS could pull out of their homes.  The HOME MORTGAGE

27  PLAINTIFFS are informed and believe and thereon allege that the HOME MORTGAGE

28  DEFENDANTS obtained a kick-back or commission    from    the    lenders    and/or

891858.1

19

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   SCARLOTTA or LEBARTHE for obtaining the loan;

2          c.      Paid THE EAR OF MALCHUS 15% to 25% or more of the unpaid

3   balance of the loan proceeds as payment for canceling the mortgages;

4          d.      Paid up to $10,000.00 or more each, as "back-end" fees to THE EAR

5   OF MALCHUS;

6          e.      Paid THE EAR OF MALCHUS a filing fee of varying amounts to file

7   their Corporations Sole with the State of Washington;

8          f.      Gave    DAVIES,    FINANCIAL    WELLBEING    SOLUTIONS,

9   KENNEDY, K. REISWIG and E. REISWIG copies of the following documents,    among

10  others;

11                 i.      A copy of the County Recorded Deed of Trust for the HOME

12  MORTGAGE PLAINTIFFS' real property;

13                 ii.     A County Recorded Grant Deed or Full Reconveyance or

14  Quitclaim Deed for their homes; and

15                 iii.    Bank Cashier's Checks payable to THE EAR OF MALCHUS

16  in various sums;

17         g.      Executed the following documents pursuant to instructions from the

18  HOME MORTGAGE DEFENDANTS;

19                 i.      A       FINANCIAL       WELLBEING       SOLUTIONS

20  "Professional/Client Services Agreement & Contract Addendum, Non-Disclosure and

21  Non-Circumvent Agreement";

22                 ii.     A   notarized   Special   Power   of   Attorney   appointing

23  FINANCIAL WELLBEING SOLUTIONS as the HOME MORTGAGE PLAINTIFFS'

24  Attorney-In-Fact and which granted FINANCIAL WELLBEING SOLUTIONS various

25  rights.

26                 iii.    A   FINANCIAL   WELLBEING   SOLUTIONS   "Don't Do

27  Agreement";

28                 iv.     A "Trust Application."

891858.1

20

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

v.      A "Certification Document – Family Trust";

vi.      A Quitclaim Deed for the HOME MORTGAGE PLAINTIFFS' homes.  The Quit Claim Deeds transferred the HOME MORTGAGE PLAINTIFFS' title interests, subject to the lender's lien for their outstanding loan, to the trustees, HEINEMAN and K JOHNSON; and

vii.      A "Revocation of Power of Attorney" directed to the lender, which purportedly repudiated the mortgage on the HOME MORTGAGE PLAINTIFFS' properties and withdrew any Powers of Attorney except "the power of attorney currently registered with D. Scott Heineman and Kurt F. Johnson,  Trustees";

65.     The HOME MORTGAGE PLAINTIFFS are informed and believe that KENNEDY, DAVIES, FINANCIAL WELLBEING ASSOCIATES and R. JOHNSON prepared to and did record Corporations Sole for each of the HOME MORTGAGE PLAINTIFFS and created trusts for each of them, pursuant to which the HOME MORTGAGE PLAINTIFFS transferred their rights, title and interest to their homes to K. JOHNSON and HEINEMAN, Trustees.

66.     When later questioned by the HOME MORTGAGE PLAINTIFFS about the status of their cancellations, Defendants K. REISWIG, KENNEDY and DAVIES repeatedly told the HOME MORTGAGE PLAINTIFFS that their cancellation programs were going well and that their mortgages would be cancelled soon.  These representations were made by telephone at various times in 2005 and 2006, and at meetings conducted by K. REISWIG and KENNEDY every other week from January 2004 through at least January 2006.     During certain meetings KENNEDY also told various HOME MORTGAGE PLAINTIFFS that DAVIES had cancer or that DAVIES has Alzheimer's, or that DAVIES was in China with a church group, to explain the delay in completing the loan cancellations.

67.     These representations were false.     The HOME MORTGAGE DEFENDANTS knew that these representations were false when made.  The HOME MORTGAGE DEFENDANTS intended that the HOME MORTGAGE PLAINTIFFS

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

would rely upon these representations. The HOME MORTGAGE PLAINTIFFS reasonably relied upon these representations for their truth in failing to take action earlier to recover their funds from the HOME MORTGAGE DEFENDANTS, and reasonably failed to realize that the HOME MORTGAGE DEFENDANTS had defrauded the HOME MORTGAGE PLAINTIFFS.

68.     The HOME MORTGAGE DEFENDANTS never obtained a cancellation of the mortgage loans which the HOME MORTGAGE PLAINTIFFS paid for.

69.     The HOME MORTGAGE PLAINTIFFS are informed and believe and thereon allege that, pursuant to the conspiracy, the HOME MORTGAGE DEFENDANTS enrolled the HOME MORTGAGE PLAINTIFFS' Corporations Sole in the INTERNATIONAL ASSOCIATION OF CORPORATION SOLE, which profited from the conspiracy.

70.     The HOME MORTGAGE PLAINTIFFS are informed and believe and thereon allege that KENNEDY shared the money that the HOME MORTGAGE PLAINTIFFS paid to THE EAR OF MALCHUS, with the other HOME MORTGAGE DEFENDANTS, all of whom thereby profited from the conspiracy.

71.     As a proximate result of the wrongful acts by the HOME MORTGAGE DEFENDANTS as herein alleged, the HOME MORTGAGE PLAINTIFFS have suffered physical injuries and severe emotional distress, and general and special damages in a sum according to proof.

72.     The HOME MORTGAGE PLAINTIFFS seek an order creating constructive or resulting trusts on behalf of each HOME MORTGAGE PLAINTIFF, governing the real and personal property that each HOME MORTGAGE PLAINTIFF transferred to the HOME MORTGAGE DEFENDANTS, and each of them, for an order setting aside the quitclaim deeds and other transfer documents that the HOME MORTGAGE DEFENDANTS defrauded the HOME MORTGAGE PLAINTIFFS into executing, and for an order revoking the irrevocable trusts fraudulently created by the HOME MORTGAGE DEFENDANTS purportedly "on behalf of" the HOME MORTGAGE PLAINTIFFS.

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

73.     The aforementioned conduct of the HOME MORTGAGE DEFENDANTS, and each of them, was an intentional misrepresentation, deceit, or concealment of material facts known to these Defendants, and each of them, with the intention on the part of these Defendants, and each of them, to deprive the HOME MORTGAGE PLAINTIFFS of property and legal rights and otherwise causing injury, and was despicable conduct that subjected these Plaintiffs to a cruel and unjust hardship in conscious disregard of the HOME MORTGAGE PLAINTIFFS' rights, so as to justify an award of exemplary and punitive damages.

74.     THE EAR OF MALCHUS, and THE LOST SHEEP are liable for punitive damages based on the acts of KENNEDY.  THE EAR OF MALCHUS and THE LOST SHEEP had advance knowledge of the unfitness of KENNEDY and employed him with a conscious disregard of the rights of the HOME MORTGAGE PLAINTIFFS, and authorized and ratified the false and fraudulent statements and tortious conduct of KENNEDY.  This advance knowledge, authorization and ratification was on the part of an officer, director and managing agent of THE EAR OF MALCHUS and THE LOST SHEEP.

75.     THE SILVER TRUMPETS is liable for punitive damages based on the acts of K. REISWIG and E. REISWIG.  THE SILVER TRUMPETS had advance knowledge of the unfitness of K. REISWIG and E. REISWIG and employed them with a conscious disregard of the rights of the HOME MORTGAGE PLAINTIFFS, and authorized and ratified the false and fraudulent statements and tortious conduct of K. REISWIG and E. REISWIG.  This advance knowledge, authorization and ratification was on the part of an officer, director and managing agent of FINANCIAL WELLBEING SOLUTIONS.

76.     NEW CENTURY MORTGAGE CORPORATION is liable for punitive damages based on the conduct of one or more of its employees.  NEW CENTURY MORTGAGE CORPORATION had advance knowledge of the unfitness of its employee(s) and employed its employee(s) with a conscious disregard of the rights of the HOME MORTGAGE PLAINTIFFS, and authorized and ratified the false and fraudulent

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

statements and tortious conduct of its employees. This advance knowledge, authorization and ratification was on the part of an officer, director and managing agent of NEW CENTURY MORTGAGE CORPORATION.

### SECOND CAUSE OF ACTION
### AGAINST THE CAR LOAN DEFENDANTS
### AND EACH OF THEM FOR FRAUD,
### THE CAR LOAN PLAINTIFFS ALLEGE

77. The CAR LOAN PLAINTIFFS incorporate and reallege paragraphs 1 through 49 as though set forth in full.

78. The term "CAR LOAN PLAINTIFFS" refers to, collectively, all plaintiffs named herein.

79. The term "CAR LOAN DEFENDANTS" refers to, collectively, defendants KENNEDY, THE EAR OF MALCHUS, AMERICAN LEGAL SERVICES, THE LOST SHEEP, FINANCIAL FREEDOM FIRST, DAVIES, FINANCIAL WELLBEING SOLUTIONS, K. REISWIG, E. REISWIG, THE SILVER TRUMPETS, COURTESY AUTOMOTIVE CENTER, GROUP, WELLS, AULT, SINGH, P. KIM, S. KIM, SKM DEBT SERVICES, GROUP and DOES 1-100.

80. At all times mentioned herein, the CAR LOAN DEFENDANTS, and each of them, knowingly and willfully conspired and agreed among themselves to defraud the CAR LOAN PLAINTIFFS. The CAR LOAN DEFENDANTS did the acts and things herein alleged pursuant to, and in furtherance of, this conspiracy.

81. Under this conspiracy, the CAR LOAN DEFENDANTS agreed among themselves to create, pursue and participate in a "debt elimination" scam or scheme, referred to as the "Automobile Loan Dismissal Program".

82. The Automobile Loan Dismissal Program is based on the same theory as the Corporation Sole/Mortgage Elimination Trust Program, alleged above.

83. The goal of the conspiracy was and is at all time relevant hereto to convince

the CAR LOAN PLAINTIFFS:

    a.    To purchase motor vehicles from COURTESY AUTOMOBILE CENTER, WELLS and AULT, at exorbitant prices and make down payments of up to half the sales price of the vehicles or more; and

    b.    To pay the other CAR LOAN DEFENDANTS thousands of dollars in fees to be able to participate in the Automobile Loan Dismissal Program.

84.    At various times throughout 2004, 2005 and 2006, the CAR LOAN DEFENDANTS told the CAR LOAN PLAINTIFFS about the Automobile Loan Dismissal Program, in person, by telephone, by email and by mail. The representations made by each of the CAR LOAN DEFENDANTS to each of the CAR LOAN PLAINTIFFS was identical or substantially similar. The CAR LOAN DEFENDANTS, individually and together, told the CAR LOAN PLAINTIFFS:

    a.    The theory underlying the Automobile Loan Dismissal Program was the same as the theory underlying the Corporation Sole/Mortgage Elimination Trust Program.

    b.    The CAR LOAN DEFENDANTS had found a loophole in the lending system;

    c.    Using the Automobile Loan Dismissal Program, the CAR LOAN PLAINTIFFS would be able to avoid the "fraud" perpetrated by the lending industry;

    d.    The Automobile Loan Dismissal Program was legal;

    e.    Pursuant to the Automobile Loan Dismissal Program, the CAR LOAN PLAINTIFFS would be able to purchase very expensive motor vehicles, often far more expensive than they could normally afford;

    f.    The CAR LOAN DEFENDANTS would take the steps necessary to insure that the CAR LOAN PLAINTIFFS' new car loans were cancelled within four to six months;

    g.    The CAR LOAN PLAINTIFFS would be able to sell their new vehicles to a motor vehicle wholesaler for the original sales price of the vehicles;

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

h.     The CAR LOAN PLAINTIFFS would be able to keep all of the proceeds from the sale of the vehicles to the wholesaler;

i.     The CAR LOAN PLAINTIFFS would then be able to repeat the process by purchasing more vehicles from COURTESY AUTOMOBILE CENTER, WELLS, GROUP, SINGH and AULT; and

j.     K. REISWIG and E. REISWIG themselves had used the program to purchase a number of brand new Cadillacs or other motor vehicles, and this proved that the program worked.

k.     That KENNEDY sent many people from the corporation to COURTESY AUTOMOBILE CENTER to buy a new car through the program.

l.     That GROUP provided about a 100 loans a year on new cars for KENNEDY and his group through COURTESY AUTOMOBILE CENTER.

85.     The CAR LOAN DEFENDANTS represented to the CAR LOAN PLAINTIFFS that the above-described statements were true.  In truth and in fact, the above-described representations were false.  The CAR LOAN DEFENDANTS knew that these representations were false when these representations were made.  The CAR LOAN DEFENDANTS also made the representations recklessly and without regard for their truth.

86.     The CAR LOAN DEFENDANTS intended that the CAR LOAN PLAINTIFFS would rely on the above-described representations, as set forth above.

87.     Based upon the representations of the CAR LOAN DEFENDANTS, the CAR LOAN PLAINTIFFS reasonably believed that the Automobile Loan Dismissal Program was legal, would give the CAR LOAN PLAINTIFFS the results promised by the CAR LOAN DEFENDANTS, was otherwise all that the CAR LOAN DEFENDANTS said it was, and that the CAR LOAN DEFENDANTS were honest and trustworthy.

88.     Relying on the representations of the CAR LOAN DEFENDANTS, and unaware of the falsity of their representations, the CAR LOAN PLAINTIFFS agreed to participate in the Automobile Loan Dismissal Program.

89.     Thereafter, following instructions from the CAR LOAN DEFENDANTS and

each of them, the CAR LOAN PLAINTIFFS took the following actions:

     a.     Paid the CAR LOAN DEFENDANTS a minimum of $6,195.00 or more as the fee to participate in the Automobile Loan Dismissal Program;

     b.     Purchased one or more high-priced vehicles from COURTESY AUTOMOBILE CENTER, GROUP, WELLS, SINGH and AULT; and

     c.     Paid Defendants COURTESY AUTOMOBILE CENTER, GROUP, AULT, SINGH and WELLS a down payment of at least one half the price of the new motor vehicle, if not more.

90.     The CAR LOAN PLAINTIFFS are informed and believe that their down payments on the motor vehicles were divided up among the various CAR LOAN DEFENDANTS so that each such defendant received a share of the down payments.

91.     As a proximate result of the wrongful acts by the CAR LOAN DEFENDANTS as herein alleged, the CAR LOAN PLAINTIFFS have suffered physical injuries and severe emotional distress, and general and special damages in a sum according to proof.

92.     The aforementioned conduct of the CAR LOAN DEFENDANTS, and each of them, was an intentional misrepresentation, deceit, or concealment of material facts known to these CAR LOAN DEFENDANTS, and each of them, with the intention on the part of the CAR LOAN DEFENDANTS, and each of them, to deprive the CAR LOAN PLAINTIFFS of property and legal rights and otherwise cause injury, and was despicable conduct that subjected the CAR LOAN PLAINTIFFS to a cruel and unjust hardship in conscious disregard of the CAR LOAN PLAINTIFFS' rights, so as to justify an award of exemplary and punitive damages.

93.     THE EAR OF MALCHUS, and THE LOST SHEEP are liable for punitive damages based on the acts of KENNEDY. THE EAR OF MALCHUS and THE LOST SHEEP had advance knowledge of the unfitness of KENNEDY and employed him with a conscious disregard of the rights of the CAR LOAN PLAINTIFFS, and authorized and ratified the false and fraudulent statements and tortious conduct of KENNEDY. This

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

advance knowledge, authorization and ratification was on the part of an officer, director and managing agent of THE EAR OF MALCHUS and THE LOST SHEEP.

94.    THE SILVER TRUMPETS is liable for punitive damages based on the acts of K. REISWIG and E. REISWIG. THE SILVER TRUMPETS had advance knowledge of the unfitness of K. REISWIG and E. REISWIG and employed them with a conscious disregard of the rights of the CAR LOAN PLAINTIFFS, and authorized and ratified the false and fraudulent statements and tortious conduct of K. REISWIG and E. REISWIG. This advance knowledge, authorization and ratification was on the part of an officer, director and managing agent of FINANCIAL WELLBEING SOLUTIONS.

95.    COURTESY AUTOMOTIVE CENTER is liable for punitive damages based on the acts of GROUP, WELLS and AULT. COURTESY AUTOMOTIVE CENTER had advance knowledge of the unfitness of GROUP, WELLS, SINGH and AULT and employed them with a conscious disregard of the rights of the CAR LOAN PLAINTIFFS, and authorized and ratified the false and fraudulent statements and tortious conduct of GROUP, WELLS, SINGH and AULT. This advance knowledge, authorization and ratification was on the part of an officer, director and managing agent of COURTESY AUTOMOTIVE CENTER.

<u>**FOR A THIRD CAUSE OF ACTION**</u>
<u>**AGAINST DEFENDANTS AND EACH OF THEM**</u>
<u>**FOR UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES**</u>
<u>**IN VIOLATION OF CALIFORNIA BUSINESS &**</u>
<u>**PROFESSIONS CODE SECTION 17200 *et seq*,**</u>
<u>**PLAINTIFFS ALLEGE**</u>

96.    Plaintiffs incorporate and reallege paragraphs 1 through 70 and 78 through 90 as though set forth in full.

97.    The actions of Defendant, as complained herein, constitute unfair and deceptively unlawful practices committed in violation of the Unfair Competition Act. The

conduct of Defendants was fraudulent, unfair and/or unlawful because, among other things:

a.      Defendants made false and misleading statements to Plaintiffs that the Corporation Sole/Mortgage Elimination Trust Program and the Automobile Loan Dismissal Program were legal;

b.      Defendants made false and misleading statements that the Corporations Sole did not violate the applicable laws, and that Plaintiffs would not violate any state or federal laws if they participated in the Corporation Sole program;

c.      Defendants made false and misleading statements to Plaintiffs that the Corporations Sole were tax exempt, would protect Plaintiffs' assets and income from creditors and federal and state tax liabilities, and would eliminate their debt;

d.      Defendants defrauded Plaintiffs by convincing Plaintiffs to transfer their real and personal property to a trust created by Defendants, over which Defendants obtained control by designating co-conspirators K. JOHNSON and HEINEMAN as the trustees;

e.      Defendants defrauded Plaintiffs by convincing them to pay thousands of dollars to create Corporations Sole;

f.      Defendants defrauded Plaintiffs by convincing them to pay thousands of dollars to Defendants to participate in the Mortgage Elimination Trust Program and Automobile Loan Dismissal Program;

g.      Defendants defrauded Plaintiffs by convincing them to refinance their real property for the full amount of equity available to them, and by convincing Plaintiffs to pay a percentage of 15%, 20% or more of the new loan proceeds to Defendants;

h.      Defendants defrauded Plaintiffs by convincing them to purchase expensive motor vehicles which Plaintiffs could not afford, and to make down payments of up to 40%, 50% or more of the sales price of the vehicles they purchased;

i.      Defendants defrauded Plaintiffs when Defendants convinced Plaintiffs to pay "back-end" fees of thousands of dollars; and

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

j.      Plaintiffs are informed and believe and thereon allege that Defendants received kick-backs for the home equity and car loans they convinced Plaintiffs to obtain, and from the down payments they convinced Plaintiffs to pay.

98.     Plaintiffs have been damaged in that they have been subjected by Defendants to unlawful, unfair or fraudulent business practices, prohibited by California's unfair competition laws, as outlined above, and thus have had their legal rights infringed. Further, Plaintiffs have suffered damage by paying defendants for "participation" in the Corporation Sole/Mortgage Elimination Trust Program and the Automobile Loan Cancellation Program, by paying Defendants a percentage of the unpaid loan proceeds Plaintiffs received upon refinancing their homes, by paying thousands of dollars in down payments on vehicles, by paying "back-end" fees, by paying increased mortgage payments, by paying car loan and insurance payments, and by transferring their interests in their homes to Defendants.

99.     The false statements, misrepresentations, omissions and concealments were made to Plaintiffs, who relied upon them in agreeing to participate in the Corporation Sole/Mortgage Elimination Trust Program and the Automobile Loan Cancellation Program, in agreeing to pay a percentage of their unpaid loan balances to Defendants, in agreeing to pay excessively large down payments for vehicles, in agreeing to pay thousands of dollars in "back-end" fees, in transferring title to their homes to Defendants and in taking the other actions alleged herein.

100.    Plaintiffs seek an order of this Court awarding Plaintiffs restitution and all other relief allowed under § 17200, *et seq.*, plus interest.

## FOR A FOURTH CAUSE OF ACTION
## AGAINST DEFENDANTS AND EACH OF THEM
## FOR FRAUD IN THE INDUCEMENT
## PLAINTIFFS ALLEGE:

101.    Plaintiffs incorporate and reallege paragraphs 1 through 70 and 78 through

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

90 as though set forth in full.

102.   Beginning in 2004, and on many occasions subsequent to said time, Plaintiffs invested in Corporations Sole with Defendants.   In exchange for having Defendants set up Corporations Sole on Plaintiffs' behalf, Plaintiffs were promised debt elimination through mortgage elimination programs and car loan elimination programs.

103.   However, at the time these Corporations Sole were formed, Defendants had no intention of performing their obligations under the Corporations Sole or to comply with their promises.   Instead, Defendants intended to falsely and fraudulently induce Plaintiffs to pay for programs that were in reality, illegal, and that Defendants had no intention of honoring.   All along, Defendants never intended to provide the services of the Corporations Sole they offered.

104.   At all relevant times, Plaintiffs were unaware of defendants' true intention not to be bound by their promises, and justifiably believed and relied upon them, and were thereby induced to refinance their homes and purchase new vehicles and continue paying fees to defendants in reliance upon these promises.

105.   As a direct and foreseeable result of Defendants' misrepresentations, Plaintiffs have suffered and continue to suffer substantial losses in equity, interest and other benefits which they would have received had defendants not fraudulently induced them into investing in the Corporations Sole.   Plaintiffs have also incurred significant expenses, both in the loss of their homes and automobiles, and in attempting to obtain alternative financing at higher interest rates.   Plaintiffs have had their good credit standing destroyed.   Moreover, Plaintiffs have suffered and continue to suffer embarrassment, humiliation and anguish in an amount to be proven at trial.

106.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiffs and in conscious disregard of the rights of Plaintiffs.   Thus, Plaintiffs are entitled to recover punitive damages from the Defendants, in an amount to be proven at trial.

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANTS AND EACH OF THEM
## FOR UNJUST ENRICHMENT,
## PLAINTIFFS ALLEGE

107.    Plaintiffs incorporate and reallege paragraphs 1 through 70, 77 through 90, 98 through 99, as though set forth in full.

108.    Defendants have benefited and have been unjustly enriched by the above alleged conduct.  Defendants have knowledge of these benefits, and have voluntarily accepted and retained these benefits.  The circumstances as described herein are such that it would be inequitable for Defendants to retain these ill-gotten benefits without paying the value thereof to Plaintiffs or through other disgorgement.

109.    Plaintiffs are entitled to the amount of Defendants' ill-gotten gains, including interest, resulting from Defendants' unlawful, unjust and inequitable conduct as described above.  Plaintiffs seek an order of disgorgement.

## FOR A SIXTH CAUSE OF ACTION
## AGAINST SCARLOTTA AND LEBARTHE
## FOR BREACH OF FIDUCIARY DUTY,
## THE HOME MORTGAGE PLAINTIFFS ALLEGE

110.    The HOME MORTGAGE PLAINTIFFS incorporate and reallege paragraphs 1 through 70 and 97 through 99, as though set forth in full.

111.    As mortgage loan brokers, SCARLOTTA and LEBARTHE owed the HOME MORTGAGE PLAINTIFFS a fiduciary duty of disclosure and good faith in regard to disclosing plaintiffs' obligations when applying for mortgage loans, in preparing their applications for plaintiffs, and in discussing their legal obligations to repay the resulting mortgage loans.

112.    SCARLOTTA and LEBARTHE breached their fiduciary duties to the

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

HOME MORTGAGE PLAINTIFFS by conspiring with the other HOME MORTGAGE DEFENDANTS to defraud the HOME MORTGAGE PLAINTIFFS, by intentionally misrepresenting facts on their loan applications, by intentionally instructing the HOME MORTGAGE PLAINTIFFS to misrepresent the truth on their loan applications, by intentionally securing loans for the HOME MORTGAGE PLAINTIFFS knowing that the loan payments were far in excess of what the HOME MORTGAGE PLAINTIFFS could afford, by falsely and fraudulently misrepresenting the legality of the Corporation Sole/Mortgage Loan Elimination Program, and by receiving a kickback or commission for SCARLOTTA's and LEBARTHE's involvement in the Corporation Sole/Mortgage Loan Elimination Program.

113.   As a proximate result of the wrongful acts of defendants as alleged herein, HOME MORTGAGE PLAINTIFFS have suffered physical injuries and severe emotional distress, and general and special damages in a sum according to proof.

114.   The aforementioned conduct of SCARLOTTA and LEBARTHE was oppressive, fraudulent, malicious, and despicable conduct that subjected these HOME MORTGAGE PLAINTIFFS to a cruel and unjust hardship in conscious disregard of the HOME MORTGAGE PLAINTIFFS' rights, so as to justify an award of exemplary and punitive damages.

## FOR A SEVENTH CAUSE OF ACTION
## AGAINST DEFENDANTS AND EACH OF THEM
## FOR CONVERSION,
## PLAINTIFFS ALLEGE

115.   Plaintiffs incorporate and reallege Paragraphs 1 through 70 and 97 through 99, inclusive, as though set forth in full.

116.   At all times herein relevant, plaintiffs were the rightful owners and possessors of the real and personal property, which property was the subject of the intended fraudulent conversion into property of the Defendants.

117.   Beginning on or about 2004, and on many occasions subsequent to said time,

Defendants, and each of them, took, stole, misappropriated and otherwise converted real and personal property belonging to Plaintiffs without the authority, consent, and otherwise permission of Plaintiffs. Plaintiffs are informed and believe and thereon allege that said property was fraudulently converted into the personal benefit of Defendants, and each of them.

118. Upon discovery of the above-referenced conduct, Plaintiffs instructed and otherwise demanded that Defendants cease said conduct, and return said real and personal property. Defendants, and each of them, refused to cease said conduct, refused to return said property, and refused to make restitution. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, continue to hold said property and use said property for an improper purpose. Plaintiffs never consented to Defendants, or any of them, to convert said property into Defendants' own permanent possession.

119. The aforementioned acts of Defendants, and each of them, were willful, oppressive, fraudulent and malicious in that said Defendants intentionally took, converted and used real and personal property from Plaintiffs that they knew they did not have rights to use. Plaintiffs are therefore entitled to punitive damages in an amount according to proof.

## FOR AN EIGHTH CAUSE OF ACTION
## AGAINST DEFENDANTS AND EACH OF THEM
## FOR CONSPIRACY TO COMMIT FRAUDULENT TRANSFER,
## PLAINTIFFS ALLEGE

120. Plaintiffs incorporate and reallege 1 through 70 and 97 through 99 inclusive, as though set forth in full.

121. Beginning in 2004 and continuing, Defendants, and each of them, agreed and knowingly and willfully conspired among themselves to defraud Plaintiffs by knowingly and intentionally transferring Plaintiffs real and personal property into property belonging to Defendants.

122. Under this conspiracy, the Defendants conspired, planned, and executed their

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

scheme to have Plaintiffs transfer title of their real and personal property into possession of the Defendants.

123. Defendants, and each of them, did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and plan as alleged above.

124. At all times mentioned herein, Defendants, and each of them, knew that the solicitation of a corporation sole program in order to have Plaintiffs transfer their real and personal property to Defendants was in reality nothing more than an illegal scheme to steal Plaintiffs' real and personal property. Notwithstanding this knowledge, Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiffs. Plaintiffs are therefore entitled to exemplary and punitive damages, according to proof.

## FOR A NINTH CAUSE OF ACTION
## AGAINST DEFENDANTS AND EACH OF THEM
## FOR INTENTIONAL MISREPRESENTATION,
## PLAINTIFFS ALLEGE

125. Plaintiffs incorporate by reference paragraphs 1 through 70, 77 through 90, and 97 through 99 of the Complaint as though fully set forth herein.

126. At the time Defendants made the representations to Plaintiffs regarding their mortgage elimination and auto loan elimination programs through their debt elimination schemes, Defendants knew that the representations made to Plaintiffs were false.

127. Defendants intended that the Plaintiffs rely on the representations when determining whether to participate in one or more of the debt elimination schemes.

128. Given their unfamiliarity with the specifics involved in the formation of a Corporation Sole, debt elimination programs, and Defendants' purported superior knowledge therein, Plaintiffs justifiably relied on Defendants' representations.

129. Plaintiffs' reliance on Defendants' representations was a substantial factor in causing them to participate in Defendants' debt elimination schemes; Plaintiffs have

collectively suffered damages in a sum to be determined at trial.

## FOR A TENTH CAUSE OF ACTION
## AGAINST DEFENDANTS AND EACH OF THEM
## FOR NEGLIGENT MISREPRESENTATION
## PLAINTIFFS ALLEGE

130.     Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 70, 78 through 90, and 97 through 99, as though fully set forth herein.

131.     Defendants represented to Plaintiffs that they would take monies from Plaintiff, invest in a Corporations Sole and mortgage/auto loan elimination program and that the Plaintiffs would have their mortgages and their auto loans eliminated.

132.     Defendants representation, was not true and they had no reasonable grounds for believing that they would be able to take monies from Plaintiffs, invest them in the Corporations Sole debt elimination programs and then eliminate Plaintiffs' mortgages and/or auto loans.

133.     Defendants made the representation to Plaintiffs with the intent that Plaintiffs would rely on their representations and invest monies from the equity in their homes, monies from refinancing their homes, and monies from the value of their automobiles.

134.     Plaintiffs were ignorant of the falsity of Defendants' representation and reasonably believed them to be true.  Plaintiffs made the investments in reliance on the representation that Defendants would use the monies invested by Plaintiffs to set up Corporations Sole and legally eliminate mortgage and auto loan debt.

135.     Defendants took Plaintiff's' investments and never returned said investment nor any profit despite Plaintiff's repeated requests that they do so.

136.     Plaintiffs were harmed as a result of Defendants' false representation that the debt elimination scheme were legal and that by investing in a Corporation Sole, Plaintiffs' debt would be eliminated. Plaintiffs' reliance on Defendants' representation was a substantial factor in causing Plaintiffs' harm.

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

137. Defendants' falsely represented material facts to Plaintiffs regarding the legal ability to eliminate their mortgage and car debt. Defendants made the representation that the debt elimination scheme were legal without any reasonable ground for believing them to be true. Defendants intended the Plaintiffs to rely on the representations so they could carry out their schemes. Plaintiffs were unaware of the falsity of the representations and justifiably acted in reliance on the representations. As a result of the reliance, Plaintiffs suffered damages.

138. As a direct and proximate result of the false representation by Defendants and each of them, Plaintiff has been damaged in the amount to be proven at trial.

## FOR AN ELEVENTH CAUSE OF ACTION
## AGAINST DEFENDANTS AND EACH OF THEM
## FOR BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING
## PLAINTIFFS ALLEGE

139. Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 70, 78 through 90, and 97 through 99 , as though fully set forth herein.

140. Defendants were obligated to perform the terms and conditions of the Corporation Sole fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiffs from performing any or all of his obligations under the contract, or any act that would deprive Plaintiffs of the benefits of the Corporation Sole.

141. As set forth above, plaintiff performed all the duties and conditions of investment required under the Corporation Sole. At all times relevant, Defendants knew that Plaintiffs had fulfilled all of their duties and conditions under the Corporation Sole.

142. Defendant breached the implied covenant of good faith and fair dealing under the Corporation Sole by intentionally, maliciously, without probable cause, and in bad faith failing to perform their obligations under the Corporation Sole.

143. As a direct and legal result of Defendants' breach of the implied covenant of

good faith and fair dealing, Plaintiffs have suffered and continue to suffer substantial losses incurred in seeking and recouping loss of their homes, loss of equity, increased finance and interest charges and loss of other benefits promised by defendants, and have suffered and continue to suffer damages, in an amount according to proof at trial.

### FOR AN TWELFTH CAUSE OF ACTION
### AGAINST DEFENDANTS CHURCH, LALONDE, COOK, TURNER & DOES 80-100, INCLUSIVE AND EACH OF THEM
### FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### TAVAREZ PLAINTIFFS ALLEGE

144. Plaintiffs MICHAEL TAVAREZ and SHAWN TAVAREZ (TAVAREZ) are and were at all times relevant hereto individuals living in this judicial district.

145. The true names and capacities of Defendants DOES 1 through 100, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs at this time, who therefore sue said Defendants, and each of them, by such fictitious names. When the true names and capacities of said Defendants, and each of them, are ascertained, Plaintiffs will seek leave to amend this Complaint to insert the same. Plaintiffs are informed and believe and thereon allege that each Defendant named herein as a DOE is responsible in some manner for each and every obligation hereinafter set forth.

146. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each Defendant is and was the duly acting and authorized agent, employee, representative, servant, alter ego or co-conspirator of each of the other Defendants, and were acting within the course and scope of such agency and employment. Plaintiffs further allege that all of the acts or omissions are or were committed with the knowledge, permission, ratification and consent of the remaining Defendants.

147. Defendant, ASSEMBLIES OF GOD CHURCH d/b/a CALVARY TEMPLE WORSHIP CENTER (Hereinafter, "WORSHIP CENTER") is and was at all times relevant hereto an unknown religious entity organized to do and doing religious business in

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

this judicial district under the laws of the State of California.

148. LALONDE, COOK and TURNER were members of the WORSHIP CENTER, where, at the times alleged, TAVAREZ, were also members.

149. It was through the membership of this congregation that TAVAREZ met and were introduced to LALONDE, COOK and TURNER. These defendants used the membership of said organization as a platform for meeting and seducing unsuspecting members into their corporate sole scheme. These activities were not a part of the religious activities of WORSHIP CENTER. LALONDE, COOK and TURNER were elders or had positions of office within WORSHIP CENTER at these times.

150. After learning of the fraudulent and illegal practices of the corporate sole scheme, TAVAREZ brought the facts and information of LALONDE, COOK and TURNER'S involvement to the elders pastor and leadership of WORSHIP CENTER. In addition to having brought TAVAREZ into their scheme, TAVAREZ believed said Defendants were continuing to use their position within WORSHIP CENTER to prey upon other members of the congregation.

151. At first, the pastor and elders at WORSHIP CENTER stated to and promised TAVAREZ that the activities with which they complained would not be condoned and would be stopped. However, this was not the action taken by the leaders of WORSHIP CENTER.

152. As described herein, Defendants refused to recognize and acknowledge that elder members including LALONDE, COOK and TURNER of the WORSHIP CENTER were involved in an illegal scam to steal money from church members. Defendants further allowed these activities to continue. Defendants then abused their positions of power and influence over Plaintiffs with the intent to cause Plaintiffs severe emotional and mental distress, and intentionally acted with the knowledge that their conduct was likely to cause Plaintiffs severe emotional and mental distress, or with reckless disregard of the substantial certainty of causing Plaintiffs to suffer humiliation, embarrassment and mental anguish by harassing Plaintiffs. These activities included Plaintiffs_____ called by Church elders and

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

members at all hours, they sent letters accusing Plaintiffs of false statements, they threatened Plaintiffs with what Plaintiffs feared to be bodily harm, unless Plaintiffs stopped all commentary about corporate sole and/or LALONDE, COOK and TURNER. Defendants' acts were extreme and outrageous, and designed to deliberately and intentionally cause plaintiff severe emotional distress.

153. Defendants' despicable, intentional, willful and malicious actions and conduct, were done for the specific purpose of causing Plaintiffs suffered extreme humiliation, mental anguish and emotional distress, even though Defendants knew or should have known the negative effect these acts would have on Plaintiffs, or with a reckless disregard for the likelihood that they would cause Plaintiffs such distress.

154. As a direct, legal and proximate cause of the conduct by Defendants, and each of them, Defendants hurt and injured in their health, strength and activity, sustaining severe emotional distress, all of which injuries have continued to cause Plaintiffs great mental and nervous pain and suffering, emotional distress, anguish, nervousness, grief, anxiety, worry, horror, shock, and humiliation, all to his general damage in an amount to be determined at trial.

155. Plaintiffs are entitled to recover punitive damages from Defendants in an amount to be proven at trial in order to punish Defendants and deter similar conduct by Defendants and others in the future.

156. Moreover, Defendants are liable for punitive damages based upon the acts of their clergy and leadership, because Defendants directed, knew and condoned all of the actions of its members on these wrongful activities, with a conscious disregard of the rights of Plaintiffs or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. The advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an elder, clergy or other leader of the WORSHIP CENTER.

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## FOR A THIRTEENTH CAUSE OF ACTION
## AGAINST DEFENDANTS CHURCH, LALONDE, COOK,
## TURNER AND DOES 80-100, INCLUSIVE AND
## EACH OF THEM FOR NEGLIGENCE
## TAVAREZ PLAINTIFFS ALLEGE

157.  Plaintiff hereby incorporates the allegations set forth in paragraphs 144 through 154, as though fully set forth herein.

158.  LALONDE, COOK, and TURNER were leaders and principals of the WORSHIP CENTER, that the WORSHIP CENTER gave its blessing to the program presented and provided by LALONDE, COOK and TURNER to WORSHIP CENTER members.  The corporate sole scheme had no relation to the religion practices of WORSHIP CENTER nor Church doctrines.

159.  As the direct and proximate result of the negligence of the above-named Defendants, and each of them,  as hereinabove alleged, Plaintiffs were hurt and injured in their respective health, strength and activity, sustaining injuries to body and shock and injuries to the nervous system and person, all of which injuries have caused and continue to cause Plaintiffs great mental, physical and nervous pain and suffering, all to the Plaintiffs' general damage in an amount in excess of the jurisdictional minimum of this Court.

160.  As a further direct and proximate result of the negligence of the Defendants, and each of them, Plaintiffs were required to and did employ physicians and surgeons to examine, treat and care for Plaintiffs, and Plaintiffs did incur medical and incidental expenses thereby. The exact amount of such expenses is presently unknown to Plaintiffs and Plaintiffs will seek leave of Court to amend this Complaint to set forth the exact amount thereof when the same has been ascertained. Plaintiffs are informed and believe and thereon allege, that as the direct and proximate result of the negligence of the Defendants, and each of them, will, for a period of time in the future, be required to

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

employ physicians and surgeons to examine, treat and care for them, in that Plaintiffs will incur additional medical and incidental expenses thereby. The exact amount of such expenses is presently unknown to Plaintiffs who will seek leave of Court to amend this Complaint to set forth the exact amount thereof when the same has been ascertained.

161. As a further, direct and proximate result of the negligence of the above-named Defendants, and each of them, Plaintiffs were unable to attend to their usual employment duties and has suffered a loss of earnings thereby. Plaintiffs are informed and believe and thereon allege, that they will be unable to attend to their usual occupation for a period of time in the future and will suffer a further loss of earnings thereby. Plaintiffs will seek leave of Court to amend this Complaint to set forth the exact amount of all such lost earnings when the same have been ascertained.

## FOR A FOURTEENTH CAUSE OF ACTION
## AGAINST DEFENDANTS CHURCH AND DOES 80-100, INCLUSIVE
## AND EACH OF THEM FOR HARASSMENT
## TAVAREZ PLAINTIFFS ALLEGE

162. Plaintiff hereby incorporates the allegations set forth in paragraphs 144 through 158, as though fully set forth herein.

163. Defendants, at the time and place herein alleged, were elders, members or clergy, and were the principals, officers and/or directors of the WORSHIP CENTER. It was well known to Defendants that members of the church including Plaintiffs were being solicited to join the debt elimination scheme by the church members and elders

164. When Plaintiffs discovered the debt elimination program was an illegal scheme, they attempted to contact the WORSHIP CENTER and notify the church leadership and clergy in order to protect other members of the church. The WORSHIP CENTER told Plaintiffs to keep silent and not notify nor warn other church members of the scheme.

891858.1

42

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

165.   It was well known to Defendants that Plaintiffs had business and community ties with other members of the WORSHIP CENTER, including a cleaning service of which many other church members were clients.  Defendants harassed Plaintiffs by informing other church members that Plaintiffs were no longer members of the church, causing Plaintiffs to be ostracized from their community and to lose much of their income as other church members cancelled the cleaning service contract with the Plaintiffs. These activities were not part of the church doctrine and were done outside the authority of religious organization and authority and solely to punish Plaintiffs.

166.   Defendants repeatedly called Plaintiffs at their home and place of business and confronted and threatened Plaintiffs with scriptures and demands for information regarding knowledge Plaintiffs had about Defendants and the illegality of their scheme.

167.   Defendants confronted and harassed Plaintiffs' TAVAREZ son, Keith Tavarez, in 2007 by informing him that Keith to tell his parents what would occur unless his parents stopped speaking out. Defendants' pressured Keith Tavarez for information Plaintiffs had regarding the debt elimination schemes and to whom Plaintiffs had spoken.

168.   As a direct, legal and proximate cause of the conduct by Defendants, and each of them, Defendants hurt and injured in their health, strength and activity, sustaining severe emotional distress, all of which injuries have continued to cause Plaintiffs great mental and nervous pain and suffering, emotional distress, anguish, nervousness, grief, anxiety, worry, horror, shock, and humiliation, all to their general damage in an amount to be determined at trial.

169.   Plaintiffs are entitled to recover punitive damages from Defendants in an amount to be proven at trial in order to punish Defendants and deter similar conduct by Defendants and others in the future.

/ / /

/ / /

/ / /

/ / /

891858.1

## FOR A SIXTEENTH CAUSE OF ACTION
## AGAINST DEFENDANTS CHURCH AND DOES 80-100,
## INCLUSIVE AND EACH OF THEM FOR STALKING,
## TAVAREZ PLAINTIFFS ALLEGE

170.   Plaintiff hereby incorporates the allegations set forth in paragraphs 144 through 166, as though fully set forth herein.

171.   Defendants willfully, maliciously and repeatedly harassed Plaintiffs and made threats to Plaintiffs with the intent to place Plaintiffs in reasonable fear for their safety by calling Plaintiffs at home, confronting Plaintiffs at church and in public places, by confronting Plaintiffs' children, by threatening Plaintiffs' children with ultimatums directed to the Plaintiffs.

172.   As a direct, legal and proximate cause of the conduct by Defendants, and each of them, Defendants hurt and injured Plaintiffs in their health, strength and activity, sustaining severe emotional distress, all of which injuries have continued to cause Plaintiffs great mental and nervous pain and suffering, emotional distress, anguish, nervousness, grief, anxiety, worry, horror, shock, and humiliation, all to their general damage in an amount to be determined at trial.

173.   Plaintiffs are entitled to recover punitive damages from Defendants in an amount to be proven at trial in order to punish Defendants and deter similar conduct by Defendants and others in the future.

WHEREFORE, Plaintiffs seek

1.     General damages according to proof;

2.     Special damages according to proof;

3.     Prejudgment interest;

4.     Punitive damages;

5.     Treble damages according to proof;

6.     An order of restitution;

7.  An order of disgorgement;

8.  An order creating constructive or resulting trusts on behalf of each HOME MORTGAGE PLAINTIFF governing the real and personal property that each plaintiff transferred to the HOME MORTGAGE DEFENDANTS, and each of them;

9.  An order setting aside the quitclaim deeds and other transfer documents that the HOME MORTGAGE DEFENDANTS defrauded the HOME MORTGAGE PLAINTIFFS into executing;

10.  An order revoking the irrevocable trusts fraudulently created by the HOME MORTGAGE DEFENDANTS purportedly "on behalf of" the HOME MORTGAGE PLAINTIFFS;

11.  Attorney fees;

12.  Costs of suit incurred herein; and

13.  Such other and further relief as the court may deem appropriate.


DATED: February 9, 2009          **WASSERMAN, COMDEN & CASSELMAN, L.L.P.**


By: _s./I.DONALD WEISSMAN_____
          I.DONALD WEISSMAN
Attorneys for ROBERT DESTFINO, ILA DESTFINO, BONNNIE BOONE, MARK HARPER, MICHAEL TAVAREZ, SHAWN TAVEREZ and PETER CHIS

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1
2
3

**CERTIFICATION OF SERVICE**

4    I hereby certify that on February 9, 2009, I electronically filed the foregoing
with the Clerk of the Court by using the CM/ECF system.

5
6
7    Respectfully Submitted,
8
9    s/I.DONALD WEISSMAN
    I.DONALD WEISSMAN
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28